IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN GLENN RAMSEY,

        Petitioner,

v.

JERI TAYLOR,

        Respondent.

Case No. 2:16-cv-00686-SI

OPINION AND ORDER

    Anthony D. Bornstein
    Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    Ellen F. Rosenblum, Attorney General
    Samuel A. Kubernick, Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Sexual Abuse. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

Petitioner and his girlfriend, Lynne Schreiber, lived together for approximately eight years. The couple lived with their natural son, Alec, as well as Schreiber's two daughters from a previous relationship, ES and KS. The couple separated in July 2006, with Petitioner living in an apartment a half mile from Schreiber and the children. Petitioner retained visitation rights with his son, and Alec would frequently visit Petitioner at his new apartment.

Alec developed a friendship with a 12-year-old girl in Schreiber's apartment complex, KW. On several occasions, KW visited with Alec at Petitioner's apartment where the trio would eat dinner and watch a movie. On the last such visit, Petitioner hugged KW, kissed her ear, licked her earlobes, and kissed her neck and shoulders. He touched her breasts over her clothing, touched her genital area under her clothing, and touched her inner thighs.

When KW returned home from Petitioner's apartment, her mother could tell something was wrong and questioned her daughter. KW told her mother that Petitioner had touched her inappropriately, but asked her not to call the police. KW's mother did not contact the police, and instead left Petitioner a

message instructing Petitioner to leave KW alone. Ultimately, however, law enforcement personnel were alerted to the abuse. When a police detective and a Department of Human Services caseworker notified Schreiber of KW's allegations, Schreiber was dismissive. Schreiber's reluctance to believe KW's allegations angered ES because she, herself, had been a victim of Petitioner's sexual abuse in the past (but had not yet disclosed the abuse). This prompted ES to leave her mother a note telling her that KW was likely being truthful because Petitioner had abused ES when she was younger. The investigation expanded, and when authorities questioned KS, she revealed that Petitioner had sexually abused her as well.

The Washington County Grand Jury indicted Petitioner on three counts of Sexual Abuse in the First Degree as to KW (Counts 1-3 occurring in 2008), one count of Sexual Abuse in the First Degree as to ES (Count 4 occurring between 1996 and 1998), and one count of Sexual Abuse in the First Degree as to KS (Count 5 occurring between 1999 and 2000). Respondent's Exhibit 102.

The case proceeded to a jury trial where the defense reasoned that ES and KS harbored animosity against Petitioner because he had been a harsh disciplinarian during the years they lived together. Petitioner testified that he also angered KW when he became upset with her for refusing to allow Alec to sit in the front seat of his car for the trip back to Schreiber's apartment complex. He therefore theorized that all three girls held grudges against him that would cause them to fabricate their stories of abuse.

During the trial, a question arose as to whether KS had made a prior out-of-court statement denying that Petitioner had sexually abused her. Kristin Griffey, a childhood friend of Schreiber's, had taken Schreiber and her children into her home for about two months during a particularly volatile time in Petitioner's and Schreiber's relationship.[1] While KS lived in Griffey's home, Griffey became concerned about KS because she witnessed changes that led her to believe KS might have been sexually abused. She observed that KS "became very just sexualized" and "just became a completely different person. Her persona was completely changed." Trial Transcript, p. 519. KS went from someone who "would wear cute appropriate, age appropriate clothing, to somebody who absolutely changed looking like what I would consider a street person or a streetwalker type of person." *Id.*

In an offer of proof, Griffey testified that she asked KS if she had ever been abused, careful to avoid asking a leading question as to "sexual" abuse so as not to lead to a false accusation. KS simply responded, "No." The trial court refused to allow the testimony because: (1) the question Griffey asked was "very vague" and pertained to generic abuse, not sexual abuse, and KS could have interpreted it in the context of domestic violence; and (2) KS's statement amounted to inadmissible hearsay because it was not inconsistent with her prior testimony. *Id* at 533-34.

---

[1] During that time, Petitioner and Schreiber had been living together, but experienced issues with domestic violence stemming from drug and alcohol abuse.

The jury convicted Petitioner on all Counts, and the trial court sentenced him to 150 months in prison. Respondent's Exhibit 101. Petitioner took a direct appeal raising state-law issues not relevant to this habeas corpus case. The Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review. *State v. Ramsey*, 245 Or. App. 165, 259 P.3d 115, *rev. denied*, 351 Or. 403, 271 P.3d 115 (2011).

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County. Among his claims, he alleged that his trial attorney had been ineffective for failing to argue that KS's denial of abuse was, in fact, admissible because it amounted to a prior inconsistent statement with respect to her testimony that Petitioner abused her. The PCR court agreed and remanded the case for a new trial only as to Count 5 (Sex Abuse I as to KS). Respondent's Exhibit 137, pp. 2-3. The PCR court otherwise denied relief on Petitioner's claims.

On appeal, Petitioner argued that trial counsel's deficient performance infected his entire trial with prejudice such that the PCR court should have vacated all of his convictions. Respondent's Exhibit 142, p. 8. The State argued that such an argument was unpreserved where Petitioner failed to raise it to the PCR court, and also argued that the claim lacked merit. The Oregon Court of Appeals affirmed the PCR court's decision without issuing a written opinion, and the Oregon Supreme Court denied review. *Ramsey v. Taylor*, 275 Or. App. 577, 366 P.3d 847 (2015), *rev. denied*, 359 Or. 523, 379 P.3d 516 (2016).

Petitioner filed this federal habeas corpus case on April 20, 2016. In his supporting memorandum, Petitioner argues that: (1) trial counsel's error with respect to KS's prior inconsistent statement infected his entire trial with prejudice such that the PCR court erred when it limited its relief only as to Count 5 of the Indictment; and (2) counsel did not adequately question KW as to the incidents alleged in the Indictment pertaining to Petitioner's contact with her. Respondent asks the Court to deny relief on the Petition because: (1) Petitioner has not sustained his burden of proof as to his unargued claims; (2) Petitioner failed to fairly present either of his argued claims to Oregon's state courts, and he cannot excuse the resulting procedural default; and (3) Petitioner's claims lack merit.

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision. *Richter*, 562 U.S. at 98-99. 770,

7 - OPINION AND ORDER

784-85 (2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II. **Unargued Claims**

Petitioner raises several claims in his Petition for Writ of Habeas Corpus. As noted above, Petitioner elects to pursue only two specific claims of ineffective assistance of counsel. Where Petitioner does not argue the merits of his remaining claims, he has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (Petitioner bears the burden of proving his claims). Even if Petitioner had briefed the merits of these claims, the court has examined them based upon the existing record and determined that they do not entitle him to relief.

## III. **Prejudicial Impact of Impeachment Evidence**

According to Petitioner, trial counsel's failure to argue the admissibility of KS's statement to Griffey as a prior inconsistent statement was prejudicial to his entire case. Respondent asserts that Petitioner never raised this issue to the PCR court, and instead couched the issue only in terms of KS's credibility. Where Petitioner's claim fails on its merits, the court declines to decide the exhaustion issue. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general

8 - OPINION AND ORDER

two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

Petitioner maintains that his case did not call for a compartmentalized credibility determination for each of the victims, but instead involved an assessment as to whether the girls, viewed collectively, fabricated the charges against him. He believes that KS's "no" response to Griffey's generic abuse inquiry was not only damaging to his case in terms of the single

charge involving KS, but bore directly on the credibility of all of the victims in his case.

Petitioner's trial attorney argued in favor of the admissibility of KS's out-of-court statement, and initially claimed that KS's "no" response to Griffey's question was "relevant on its own, because it's a statement of one of the complaining witnesses that contradicts the statements that she's made in court." Trial Transcript, pp. 531-32. The trial judge appeared disinclined to share this view, and asked, "How does that contradict her statements in court?" *Id* at 532. Counsel responded that he "misspoke about that" and abandoned that particular argument. *Id* at 532.

The trial court ultimately refused to allow KS's out-of-court statement to Griffey. It reasoned as follows:

> . . . [Griffey's] question was a very general question. It was a very vague question in context of why the girl was there, why [KS] was there, and what had been happening over at the house before she moved in or temporarily stayed with Ms. Griffey. I think [the prosecutor] does a good job of pointing that out.
>
> Here these girls are there because of the alcohol abuse and the abuse with regard to drugs. And when she asked them, "Have you been abused?" there is some domestic violence also that was testified to, and is an issue. And for all of those reasons, the girls are over at Ms. Griffey's house. And so when they ask if she's been abused, I mean, we don't know if she was asking about domestic violence or what. So it would lead the jury to make an improper reference to speculative or something along those natures.

> The second issue is, it is hearsay. I mean it
> is – it is an out-of-court statement used for
> the truth of the matter asserted. She said,
> "No." And so it is hearsay and it's not an
> inconsistent statement, and so it's
> inadmissible in that sense.

*Id* at 533-34.

The PCR court disagreed with this conclusion, and found that KW's "no" statement to Griffey "denied the abuse" and amounted to a prior inconsistent statement sufficient to overcome the hearsay obstacle. Respondent's Exhibit 137, p. 2. The PCR court concluded that counsel's failure to argue the admissibility was "inadequacy," and that the omission was of the kind that "has a tendency to affect the outcome and is prejudicial." *Id* at 3. It therefore granted relief as to the conviction on Count 5 (involving KW).

Although Petitioner now asserts that the prejudicial impact of counsel's error impacted all of his charges, during his PCR hearing, he acknowledged that it "may not have bore on the credibility of all the victims. . . ." Respondent's Exhibit 136. In addition, as Respondent points out, not only did the children's allegations pertain to very different periods of time,[2] but nothing in the record shows that the three victims conspired together as to their allegations. It is therefore difficult for this Court to conclude that had counsel made the argument Petitioner advocates, there was a reasonable probability that the outcome of Counts 1-4 would have been different.

---

[2] The conduct as to KW allegedly occurred in 2008, whereas the conduct involving ES occurred between 1996 and 1998, and that involving KS occurred between 1999 and 2000. Respondent's Exhibit 102, pp. 6-13.

11 - OPINION AND ORDER

Consequently, upon an independent review of the record, the Court cannot conclude that the state-court decision denying relief on this claim was either contrary to, or an unreasonable application of, clearly established federal law.

## II. **Failure to Adequately Question KW**

Petitioner next alleges that his trial attorney was ineffective for failing to adequately question KW as to the incidents alleged in the Indictment pertaining to Petitioner's contact with her. Petitioner concedes that he failed to raise this issue in Oregon's state courts, but asks the Court to nevertheless review the claim because his appointed PCR attorney should have raised it.

Traditionally, the performance of PCR counsel could not be used to establish cause and prejudice to excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) (only the constitutionally ineffective assistance of counsel constitutes cause); *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987) (there is no constitutional right to counsel in a PCR proceeding). However, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court found "it . . . necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Id* at 8. It concluded, "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*.

12 - OPINION AND ORDER

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of trial counsel if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id* at 17.

In order to show that the omitted claim is substantial, a petitioner must "demonstrate that the underlying ineffective assistance of trial counsel claim . . . has some merit." *Id* at 14. A claim is considered "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Id* at 15. In order to make the second required showing that appointed PCR counsel was "ineffective," a petitioner "need only show that his PCR counsel performed in a deficient manner. A prisoner need not show actual prejudice resulting from his PCR counsel's deficient performance, over and above his required showing that the trial-counsel IAC claim be 'substantial' under the first *Martinez* requirement." *Detrich v. Ryan*, 740 F.3d 1237, 1245-46 (9th Cir. 2013).

In his *pro se* Petition,[3] Petitioner claims that KW "was asked if the petitioner had touched her butt," and she replied, "no." Petition (#2), p. 20. He argues that counsel should have taken that opportunity to further inquire into the other claims she made against him.

---

[3] Petitioner's appointed attorney refers this Court to the *pro se* Petition for argument on this claim.

KW testified that Petitioner "touched me in places that I find to be private areas." Trial Transcript, p. 384. She specified that Petitioner touched her breasts over her clothing and ran his fingers along the inside of her waistband, but did that "[j]ust in the front." *Id* at 391. She stated that although he touched her in her genital area under her clothes, he did not touch her "back private area." *Id* at 392. The Court does not believe counsel could have made significant headway with this testimony, and therefore finds the ineffective assistance of trial counsel claim to be insubstantial. Accordingly, PCR counsel was under no obligation to raise it, thus Petitioner is not able to excuse his procedural default.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied. The Court issues a Certificate of Appealability limited only to Petitioner's claim that the his trial attorney's failure to introduce KS's prior inconsistent statement infected his entire trial with prejudice and warranted a new trial on all charges.

IT IS SO ORDERED.

DATED this 1st day of February, 2018.

Michael H. Simon
United States District Judge